UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYRIN LEE BLOUNT,<br><br>Petitioner,<br><br>v.<br><br>DAVID DAVEY, Warden,<br><br>Respondent. | No. 1:16-cv-01653-DAD-SKO HC<br><br>**FINDINGS AND RECOMMENDATIONS TO DENY PETITION FOR WRIT OF HABEAS CORPUS AND DECLINE TO ISSUE CERTIFICATE OF APPEALABILITY**<br><br>**(Doc. 22)** |

Petitioner, Tyrin Lee Blount, is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. Petitioner raises five grounds for habeas relief: (1) the pretrial identification procedures were unduly suggestive; (2) the trial court erroneously admitted evidence in violation of Petitioner's rights pursuant to *Miranda*[1]; (3) the trial court erred by conducting *ex parte* communication with the jury; (4) improper admission of evidence; and (5) insufficient evidence. The Court referred the matter to the undersigned pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 and 304. Having reviewed the record and applicable law, the undersigned recommends that the Court deny habeas relief.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

1

I.     **Procedural and Factual Background[2]**

On April 10, 2012, shortly after 9:00 a.m., a young African-America male approached Sue Lopez's ("Lopez") front door, knocked loudly, and repeatedly rang the doorbell. Lopez and her adult daughter, Sarah Andrews ("Andrews"), looked at the man through the door's peephole. After 30 seconds, the man walked to a gold, mid-sized car parked on the street in front of the house. Two other African-American men were in the vehicle and all three drove away.

A short time later, a young African-American man jumped over the fence into Lopez's backyard. Lopez called 911. Finding a dog in the backyard, the man jumped back over the fence and walked towards a street behind Lopez's house. Through the slats in her backyard fence, Lopez could see the same gold vehicle parked on the street behind her residence, Rolling Ridge Drive.

Andrews and Lopez observed three men walk toward their house from Rolling Ridge Drive. The men proceeded to the front door, rang the doorbell, and knocked very loudly. Andrews looked at them through the peephole, while Lopez peeked through a side window two or three feet away from the men. Lopez then looked through the main window, which was seven or eight feet away from the men.

Lopez and Andrews retreated from the door to hide, but after hearing the front door kicked open, Andrews came out and discovered the three men inside the home. Andrews stood eight feet from the men and looked at their faces for 10 seconds.

The three men fled through the back sliding glass door into the backyard. It took the men approximately 20 seconds to exit the house. Two of the men jumped the backyard fence to the west and the third man jumped the fence to the south.

[2] The factual background, taken from the opinion of the California Court of Appeal, Fifth Appellate District, *People v. Blount*, (No. F066744) (Cal. Ct. App. June 18, 2015), is presumed to be correct. 28 U.S.C. § 2254(e)(1).

Bakersfield police officers arrived at or around the time the men were fleeing from the house. The police officers began a search and a police officer located Petitioner walking in a field approximately one-half mile south of Lopez's home. The officer approached Petitioner in his patrol car and heard him speaking on his cellular phone. Petitioner said, "It's over, Cuzz." Petitioner ran away from the officer, but was apprehended shortly thereafter.

Petitioner's co-defendants, Franklin Lamar Randle ("Randle") and Clifford Lee Jackson, Jr. ("Jackson"), were found together in a backyard three or four houses to the west of Lopez's house.

Later that morning, the police conducted field identifications by individually showing Petitioner, Randle, and Jackson to Andrews and Lopez. Both Andrews and Lopez identified the three co-defendants as the men who broke into their house.

Officers located the gold vehicle parked on Rolling Ridge Drive, behind the Lopez house. Petitioner's identification was inside the vehicle and he had a key in his possession which operated the car.

At trial, neither Andrews nor Lopez could describe the suspects' facial features on the day of the burglary, but both described the clothing worn by the suspects. At times, their testimony conflicted regarding the suspects' clothing and how the events unfolded on the day. Andrews was able to identify each of the co-defendants as the men she encountered in her home and was "sure" of her trial identifications. Andrews also confirmed the co-defendants were the same men she identified on the morning of the burglary.

Lopez had difficulty identifying the co-defendants. She testified about never having seen the three men inside her house. Through her bedroom window, Lopez saw the three men flee into her backyard and jump over the fence, but she only saw one face for a few seconds.

Both Andrews and Lopez identified a picture of Petitioner's car as the vehicle they saw outside the residence before the incident.

Lopez's neighbor, Anthony Rodriguez ("Rodriguez") and his girlfriend, Brittany Cocanower ("Cocanower"), also testified at trial. They both observed the gold vehicle parked in front of Lopez's house on the morning of the incident occupied by three African-American men.

Rodriguez testified that he saw people get out of the vehicle and knock on Lopez's door before returning to the car and driving around the corner. Rodriguez saw the men walk back to the door and heard them kick it in. He initially identified the co-defendants as the three men he saw on the morning of the incident. However, on cross-examination he admitted having only seen two individuals approach the Lopez residence and he believed it was either Petitioner or Randle whom he had never seen before. He stated he initially identified all the co-defendants in court because they were the people arrested by the police after the incident and because he confirmed it with his girlfriend, Cocanower.

Cocanower identified a photograph of Petitioner's vehicle as the vehicle she saw in front of the Lopez residence. She saw a man exit the vehicle and approach Lopez's house before returning a minute or two later, and then saw the vehicle drive away. She next heard a lot of noise at the Lopez residence, like someone kicking something, and saw a man run through her backyard. She believed a second man might have been present in her backyard, but she did not see his face. Cocanower was not asked to identify the co-defendants in court.

Officer Brian Holcombe ("Holcombe") of the Bakersfield Police Department testified as the prosecution's gang expert. He discussed the history of the gang which co-defendants were alleged to be a part of, the Country Boy Crips, its pattern of criminal activity, and certain predicate offenses its members had committed. Based on a review of tattoos, arrest records, street checks, and booking statements, Holcombe opined the co-defendants were each active members of the

Country Boy Crips as of the date of the Lopez burglary.

The jury found the co-defendants guilty of felony burglary (Cal. Penal Code § 460(a)), and promoting felony street gang conduct (Cal. Penal Code § 186.22(a)). The jury found true for each co-defendant that a person other than an accomplice was present during the commission of the burglary (Cal. Penal Code § 667.5(c)(21)), but found not true that the burglary was committed for the benefit of a criminal street gang (Cal. Penal Code § 186.22(b)(1)).

In a bifurcated proceeding, the trial court found true that Petitioner had suffered a prior conviction within the meaning of California's three strikes law (Cal. Penal Code §§ 667(c)-(j), 1170.12(a)-(f)), that the prior conviction qualified as a prior serious felony (Cal. Penal Code § 667(a)), and that Petitioner had served a prior prison term (Cal. Penal Code § 667.5(b)).

Petitioner was sentenced to an aggregate prison term of 17 years for the felony robbery conviction, and an aggregate prison term of 12 years for the felony street gang conduct conviction, which was stayed.

On June 18, 2015, the California Court of Appeal ("Court of Appeal") affirmed the judgment. The Court of Appeal denied Petitioner's petition for rehearing on July 10, 2015. The California Supreme Court denied review on September 23, 2015.

Thereafter, Petitioner filed various state petitions for writ of habeas corpus. Petitioner filed a petition for writ of habeas corpus with the state superior court on February 5, 2016, which was denied on June 3, 2016. On June 21, 2016, he filed a petition with the Court of Appeal, which was denied on July 21, 2016.

Petitioner filed his petition for writ of habeas corpus before this Court on November 2, 2016. On March 6, 2017, the Court granted Petitioner's motion to stay and abey the proceedings to exhaust his unexhausted claims in state court.

On March 20, 2017, Petitioner filed a petition for writ of habeas corpus with the California Supreme Court, which was denied on May 17, 2017.

Petitioner filed an amended petition for writ of habeas corpus with this Court on June 19, 2017, and the Court lifted the stay on June 22, 2017. Respondent filed an answer to the petition on August 21, 2017.

## II.    Standard of Review

A person in custody as a result of the judgment of a state court may secure relief through a petition for habeas corpus if the custody violates the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 (2000). On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed thereafter. *Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997). Under the statutory terms, the petition in this case is governed by AEDPA's provisions because it was filed April 24, 1996.

Habeas corpus is neither a substitute for a direct appeal nor a device for federal review of the merits of a guilty verdict rendered in state court. *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring). Habeas corpus relief is intended to address only "extreme malfunctions" in state criminal justice proceedings. *Id.* Under AEDPA, a petitioner can obtain habeas corpus relief only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003); *Williams*, 529 U.S. at 413.

"By its terms, § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions set forth in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

As a threshold matter, a federal court must first determine what constitutes "clearly established Federal law, as determined by the Supreme Court of the United States." *Lockyer*, 538 U.S. at 71. In doing so, the Court must look to the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state-court decision. *Id.* The court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Id.* at 72. The state court need not have cited clearly established Supreme Court precedent; it is sufficient that neither the reasoning nor the result of the state court contradicts it. *Early v. Packer*, 537 U.S. 3, 8 (2002). The federal court must apply the presumption that state courts know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). The petitioner has the burden of establishing that the decision of the state court is contrary to, or involved an unreasonable application of, United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

"A federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer*, 538 U.S. at 75-76. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, the AEDPA standard is difficult to satisfy since even a strong case for relief does not demonstrate that the state court's determination was unreasonable. *Harrington*, 562 U.S. at 102.

**III.    The State Court Did Not Err in Denying Petitioner's Identification Procedures Claim**

In his first ground for habeas relief, Petitioner contends the eyewitness identification procedure, wherein police officers showed the three co-defendants to Lopez and Andrews, was "'impermissibly suggestive' and tainted the trial identification." (Doc 22 at 2.)  Respondent counters the state court's decision was not objectively unreasonable, because the opinion is not contrary to, nor an unreasonable application of, U.S. Supreme Court precedent.  (Doc. 27 at 15, 16.)

**A.    Standard of Review**

The Due Process Clause of the U.S. Constitution prohibits the use of identification procedures that are "unnecessarily suggestive and conducive to irreparable mistaken identification." *Stovall v. Denno*, 388 U.S. 293, 302 (1967, *overruled on other grounds by Griffith v. Kentucky*, 479 U.S. 314, 326 (1987).  "It is the likelihood of misidentification which violates a defendant's right to due process[;]" therefore, "[s]uggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous." *Neil v. Biggers*, 409 U.S. 188, 198 (1972).  An identification procedure is suggestive where "[i]n effect, the police repeatedly sa[y] to the witness, 'This is the man.'" *Foster v. California*, 394 U.S. 440, 443 (1969) (citing *Biggers v. Tennessee*, 390 U.S. 404, 407 (1968) (Douglas, J., dissenting)).

"[W]hat triggers due process concerns is police use of an unnecessarily suggestive identification procedure, whether or not they intended the arranged procedure to be suggestive." *Perry v. New Hampshire*, 565 U.S. 228, 232 n.1 (2012).  However, "even when the police use [a suggestive identification] procedure, suppression of the resulting identification is not the inevitable consequence." *Id*. at 719.  A Court must assess each case to determine whether improper police conduct created a "substantial likelihood of misidentification." *Biggers*, 409 U.S. at 201.  "Where

8

the 'indicators of [a witness'] ability to make an accurate identification' are 'outweighed by the corrupting effect' of law enforcement suggestion, the identification should be suppressed." *Perry*, 565 U.S. at 239 (quoting *Manson v. Brathwaite*, 432 U.S. 98, 114, 116 (1977)).

To determine the reliability of an identification, courts consider several factors: (1) the opportunity to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the prior description; (4) the witness' level of certainty at the time of the identification procedure; and (5) the length of time between the incident and the identification. *Manson*, 432 U.S. at 114 (citing *Biggers*, 409 U.S. at 199-200). The "central question" is "whether under the 'totality of the circumstances' the identification is reliable even though the confrontation procedure was suggestive." *Biggers*, 409 U.S. at 199.

## B. State Court of Appeal Opinion

The Court of Appeal dismissed Petitioner's claim that the eyewitness identification procedure was impermissibly suggestive.

Prior to trial, defense counsel filed motions in limine to exclude the field identifications, because they were "highly suggestive and without extenuating circumstances." *People v. Blount*, (No. F066744) (Cal. Ct. App. June 18, 2015), at 8. The trial court held a hearing pursuant to California Evidence Code § 402.[3] *Id*. The Court of Appeal summarized the evidence adduced at the § 402 hearing, as follows:

> On the morning of the incident, police officers had Andrews and Lopez separately and individually view the [co-defendants].
>
> Randle was viewed 30 to 40 feet from the Lopez front porch while he stood near a patrol vehicle with an officer present. FN5 Prior to the viewing of Randle, Andrews and Lopez were individually told that the subject "may or may not be involved in the crime and it was just as important to protect the innocent as it was to convict the guilty." They were advised to not pay attention to clothing because that could change, but to focus on the subject's facial features and the physical description.

---

[3] Pursuant to California Evidence Code §402(b), "[t]he court may hear and determine the question of the admissibility of evidence out of the presence or hearing of the jury . . . ."

9

Both Andrews and Lopez identified Randle as being involved in the incident.

FN5  The officer testified at trial she could not recall if Randle wore handcuffs.

Andrews and Lopez were each taken in separate patrol vehicles to view the other suspects.  FN6  The officer with Andrews admonished her the police "had subjects detained, the subjects were in handcuffs, and the fact that we have these subjects detained and that they were in handcuffs was not to prejudice her statements" in any way.  Andrews sat in the front passenger seat of a patrol vehicle and separately viewed [Petitioner and Jackson] from approximately 50 feet away.  [Petitioner and Jackson] exited separate patrol vehicles wearing handcuffs, stood in the presence of officers, and were instructed to turn to the right and left.  Andrews identified each of the [men] as involved in the incident.  After viewing all [three], Andrews said she was 100 percent certain of her identifications that morning.

FN 6  Andrews was shown and identified Randle a second time.  It is not clear from the record why Andrews was asked to view Randle more than one time.

Lopez separately viewed [Petitioner] and Jackson at different locations about 45 minutes after the incident.  Prior to the viewings, she was admonished the police had suspects in custody who may or may not be the people who had broken into her residence.  Lopez was advised hairstyles and clothing can change.  She sat in the rear of a patrol vehicle, approximately 60 to 70 feet away, and separately viewed [Petitioner] and Jackson, who exited patrol vehicles while handcuffed and in the presence of officers.  After each separate viewing, Lopez indicated they were involved in the incident.

*Id*. at 9-10.

Defense counsel argued the "showups were suggestive" because the three men "were needlessly handcuffed and taken from patrol vehicles, and any in-court identifications would be tainted and unreliable." *Id*. at 10.  The trial court denied the motion in limine, and allowed the prosecutor to present the field showups to the jury, because they were not "unduly suggestive." *Id*. at 10.

The Court of Appeal discussed the standard of review for determining whether the admission of a pretrial identification violates due process:

To determine if admission of identification evidence violates due process, an appellate court employs a two-part test.  First, we determine if law enforcement used a procedure that was unduly suggestive and unnecessary.  (*People v. Virgil* (2011) 51 Cal.4th 1210, 1256 (*Virgil*).)  If not, the identification is admissible and the due process inquiry ends.  (*Ibid*.)  Second, if the procedure was unduly suggestive and

unnecessary, we determine whether, despite such suggestiveness, the witness's identification of the defendant was reliable under the totality of the circumstances. (*Ibid.*) The goal is to prevent "'a very substantial likelihood of irreparable misidentification.' [ ]" (*Neil v. Biggers* (1972) 409 U.S. 188, 198.)

The defendant bears the burden of demonstrating the identification procedure was suggestive, unreliable, and so unfair it violated his due process rights. (*People v. DeSantis* (1992) 2 Cal.4th 1198, 1222.) The defendant must show "unfairness as a demonstrable reality, not just speculation." (*Ibid.*) If the defendant raised and preserved the issue, we independently review the trial court's ruling a pretrial identification procedure was not unduly suggestive. (*People v. Avila* (2009) 46 Cal.4th 680, 698.)

## A. Analysis

[Petitioner] objects to California law permitting showups, arguing the reasoning is flawed and based on a strained interpretation of the United States Supreme Court authority. . . . He asserts the showups here were unduly suggestive, unnecessary, and unreliable under the totality of the circumstances.

. . .

We will not accept [Petitioner's] invitation to abolish showups in light of federal and California law permitting them under a "totality of the circumstances" approach. (*Stovall v. Denno* (1967) 388 U.S. 293, 302 (*Stovall*), overruled on other grounds in *Griffith v. Kentucky* (1987) 479 U.S. 314, 321-322; *People v. Ochoa* (1998) 19 Cal.4th 353, 413 (*Ochoa*); *People v. Clark* (1992) 3 Cal.4th 41, 136; *People v. Floyd* (1970) 1 Cal.3d 694, 714 (*Floyd*), overruled on other grounds in *People v. Wheeler* (1978) 22 Cal.3d 258, 287, fn. 36; *People v. Bisogni* (1971) 4 Cal.3d 582, 587 (*Bisogni*).)

Our Supreme Court holds a "''single person showup" is not inherently unfair.'" (*Ochoa*, *supra*, 19 Cal.4th at p. 413, quoting *Floyd*, *supra*, 1 Cal.3d at p. 714; accord, *Bisogni*, *supra*, 4 Cal.3d at p. 587.) Such showups are considered unfair when they are not neutral and unnecessarily suggest to the witness in advance the identity of the person suspected by the police. (*Police v. Yeoman* (2003) 31 Cal.4th 93, 123-124.) To warrant suppression of a witness's identification of a defendant, the state "must, wittingly or unwittingly, initiate an unduly suggestive procedure." (*Ochoa*, *supra*, 19 Cal.4th at p. 413.) It is not enough that a showup was suggestive because suppression will only occur where the suggestiveness was "undue" or excessive. (See *Neil v. Biggers*, *supra*, 409 U.S. at pp. 198-199; *People v. Kennedy* (2005) 36 Cal.4th 595, 610, disapproved on other grounds in *People v. Williams* (2010) 49 Cal.4th 405, 459.)

As discussed below, the showups here did not violate due process.

**1. The field identifications were neither unduly suggestive nor unnecessary.**

[Petitioner] contends a single person showup is impermissible absent an exigent circumstance preventing a live lineup and he asserts no such exigency existed here. However, his reliance on *Stovall*, *supra*, 388 U.S. 293[4] for this proposition is misplaced as *Stovall* does not hold an exigency, such as a dying eyewitness, is the only circumstance where a single person showup satisfies due process. Instead, the totality of the circumstances are analyzed. (*Id*. at p. 302.)

Single person showups have a valid purpose to exonerate the innocent and aid in discovering the guilty close in time and proximity to the offense. (*People v. Nguyen* (1994) 23 Cal.App.4th 32, 38-39; *People v. Martinez* (1989) 207 Cal.App.3d 1204, 1219.) Field identifications are encouraged because the inherent suggestiveness is offset by the reliability stemming from an immediate determination regarding whether the correct person has been apprehended when events are still fresh in the witness's mind. (*In re Carlos M*. (1990) 220 Cal.App.3d 372, 387; accord, *People v. Martinez*, *supra*, 207 Cal.App.3d at p. 1219; *People v. Cowger* (1988) 202 Cal.App.3d 1066, 1071-1072.)

Here, the police conducted the field identifications approximately 45 minutes after the incident. The prompt identifications were likely more accurate than a delayed lineup because the events were still fresh in the witnesses' minds. The field identifications were based on a valid need for law enforcement to discover the correct suspects and exonerate the innocent close in time and proximity to the crime. (*People v. Martinez*, *supra*, 207 Cal.App.3d at p. 1219.) [Petitioner's] arguments that these showups were unnecessary are rejected.

[Petitioner] also asserts the identifications were suggestive because he was handcuffed and removed from a police cruiser. However, the presence of handcuffs on a detained suspect is not by itself so unduly suggestive as to taint the identification. (*In re Carlos M*., *supra*, 220 Cal.App.3d at p. 386.) Likewise, keeping a suspect in a police vehicle during a field identification may be justified by the nature of the circumstances and does not give rise to a substantial likelihood of misidentification. (People v. Craig (1978) 86 Cal.App.3d 905, 914.)

---

[4] In *Stovall*, police officers took a suspect to the witnesses' hospital room one day before she went into surgery. *Stovall v. Denno*, 388 U.S. 293, 295 (1967, *overruled on other grounds by Griffith v. Kentucky*, 479 U.S. 314, 326 (1987). The suspect was handcuffed to one of five police officers who, along with two members of the District Attorney's office, brought him into the hospital room. *Id*. The U.S. Supreme Court held,

> [h]ere was the only person in the world who could possible exonerate [the suspect]. Her words, and only her words . . . could have resulted in freedom for [the suspect]. . . . No one knew how long [the witness] might live. . . . Under these circumstances, the usual police lineup . . . was out of the question.

*Id*. at 302.

Finally, courts have considered the admonitions given to witnesses in determining whether an unduly suggestive procedure occurred.  (See *People v. Cunningham* (2001) 25 Cal.4th 926, 990 [witness "was not to assume the person who committed the crime was pictured therein, that it was equally important to exonerate the innocent, and that he had no obligation to identify anyone"]; *People v. Arias* (1996) 13 Cal.4th 92, 169 [officer's statement to witness "the suspect 'might be in here, he might not'" was considered]; *In re Carlos M.*, *supra*, 220 Cal.App.3d at p. 386 [nothing in record indicates police said anything to victim to suggest people she would be viewing were in fact her attackers].)

Here, the police admonished both Andrews and Lopez prior to the showups.  Lopez was told that the suspects may or may not be the people who had broken into the residence.  Before viewing Randle, both Andrews and Lopez were told that he "may or may not be involved in the crime and it was just as important to protect the innocent as it was to convict the guilty."  Andrews was also told the fact the suspects were handcuffed and in police custody should not prejudice her statements.  Nothing in this record suggests the officers indicated to Andrews or Lopez that [the co-defendants] were the perpetrators.  In light of the admonitions given, the police procedures used here did not strongly suggest [the co-defendants] were the perpetrators, as [Petitioner] contends.  There was not a "'"very substantial likelihood of irreparable misidentification."' [ ]" (*People v. Arias*, *supra*, 13 Cal.4th at p. 170.)

Under the totality of the circumstances, [co-defendants'] showups were neither unduly suggestive nor unnecessary.

## 2.  The field identifications were reliable.

Even if [the co-defendants'] field showups were unduly suggestive and unnecessary, the identifications were nevertheless admissible as reliable under the totality of the circumstances.  (*Virgil*, *supra*, 51 Cal.4th at p. 1256.)  To determine reliability, an appellate court takes into account such factors as "'the opportunity of the witness to view the suspect at the time of the offense, the witness's degree of attention at the time of the offense, the accuracy of his or her prior description of the suspect, the level of certainty demonstrated at the time of the identification, and the lapse of time between the offense and the identification.' [ ]" (*Ibid*.)

Here, both witnesses had multiple opportunities to view [co-defendants] at the time of the offense, both before [co-defendants] entered the house and as they fled.  Andrews was 100 percent certain in her field identifications, and neither she nor Lopez expressed any doubt when identifying each suspect individually in the field.  The field identifications occurred when Andrews's and Lopez's memories were still fresh.

[Petitioner's] arguments are unpersuasive that Andrews and Lopez did not have significant time to observe [co-defendants] or that the field identifications were not very certain.  We also do not agree with [Petitioner's] contentions that Andrews and Lopez did not have a very "advantageous point" to view the suspects, they were under stress so their attention was questionable, and they could only identify [the

co-defendants] based on clothing and not facial features.

To the contrary, although Andrews and Lopez were certainly under extreme stress during this incident, Andrews viewed [the co-defendants'] faces when they stood in her home approximately eight feet from her. Other than "shadows" present, neither Andrews nor Lopez expressed much difficulty in seeing the suspects on their porch as they alternately looked through the front windows and the peephole. These showups did not create a very substantial likelihood of irreparable misidentification. Instead, the accuracy of Andrews's and Lopez's identifications was an issue for the jury to weigh. (*Virgil*, *supra*, 51 Cal.4th at p. 1256; *Manson v. Brathwaite* (1977) 432 U.S. 98, 116.) Under the totality of the circumstances, [the co-defendants] have not met their burden of demonstrating that the field identification procedures were unreliable and so unfair that it violated due process. (*People v. DeSantis*, 2 Cal.4th at p. 1222.)

### 3. [The co-defendants] cannot establish prejudice.

Even if the trial court erred in failing to suppress the field identifications, the error was not prejudicial under *Chapman v. California* (1967) 386 U.S. 18, 24. At trial, Andrews identified the [co-defendants] as the three males whom she confronted in her home, and she was sure of her trial identifications. Given the multiple opportunities Andrews had to view the [co-defendants], including their faces, her trial identifications were not tainted by the field showups. (*Simmons v. United States* (1968) 390 U.S. 377, 384.)

Moreover, [Petitioner's] vehicle was identified outside the Lopez residence with three African-American males inside just before the burglary. [Petitioner] was arrested in a vacant field about a half mile from the Lopez residence after the burglary. Before running from law enforcement, [Petitioner] said into his cellular phone, "It's over, Cuzz."

Despite [Petitioner's] arguments to the contrary, this was not a close case or a case of mistaken identity due to the evidence linking [Petitioner] to the crime scene, the three males observed in [Petitioner's] vehicle just before the crime, and Andrews's unequivocal trial identifications. It is beyond a reasonable doubt any error was harmless.

*Id*. at 10-16, Lodged Doc. 6 at 6-13.

## C. The State Court Did Not Err in Rejecting Petitioner's Identification Procedure Claim

Here, analyzing Petitioner's claim under U.S. Supreme Court precedent, the Court of Appeal determined whether the identification procedure was unduly suggestive and unnecessary. The Court of Appeal held the identification procedure was not unduly suggestive because it was

conducted approximately 45 minutes after the robbery and was based on "a valid need for law enforcement to discover the correct suspects and exonerate the innocent close in time and proximity to the crime." *Id*. at 13 (citing *People v. Martinez*, 207 Cal.App.3d 1204, 1219 (1989)). Further, although Petitioner was in handcuffs during the identification procedure, the Court of Appeal found the admonitions given to Lopez and Andrews[5] offset any suggestion that the co-defendants were the perpetrators. *Id*. at 13-14.

Although the Court of Appeal determined the identification procedure was not impermissibly suggestive, it also analyzed whether, assuming the procedure was impermissibly suggestive, the identification was reliable under the totality of the circumstances. *Id*. at 14-16. The Court of Appeal analyzed Petitioner's claim using the five factors set out by the U.S. Supreme Court: (1) the opportunity to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the prior description; (4) the witness' level of certainty at the time of the identification procedure; and (5) the length of time between the incident and the identification. *Manson*, 432 U.S. at 114 (citing *Biggers*, 409 U.S. at 199-200).

Here, utilizing these five factors, the Court of Appeal found,

> both witnesses had multiple opportunities to view [the co-defendants] at the time of the offense, both before [the co-defendants] entered the house and as they fled. Andrews was 100 percent certain in her field identifications, and neither she nor Lopez expressed any doubt when identifying each suspect individually in the field. The identifications occurred when Andrews's and Lopez's memories were still fresh.

*Blount*, (No. F066744), at 14-15. Under the "totality of the circumstances," Andrews' and Lopez's identification of Petitioner was reliable. Because Andrews' and Lopez's identification of Petitioner

---

[5] Lopez was instructed "that the suspects may or may not be the people who had broken into the residence." *Blount*, (No. F066744), at 13-14. Andrews and Lopez "were told that [co-defendant Randle] 'may or may not be involved in the crime and it was just as important to protect the innocent as it was to convict the guilty.'" *Id*. at 14. Finally, Andrews was told "the fact the suspects were handcuffed and in police custody should not prejudice her statements." *Id*.

was not unreliable, Petitioner is not entitled to relief on his claim that the identification procedure was unduly suggestive. The decision of the Court of Appeal was neither contrary to, nor an unreasonable application of U.S. Supreme Court precedent. Accordingly, the Court recommends denying Petitioner's claim.

## IV. The Trial Court Did Not Err in Admitting Petitioner's Statements During his Booking Interview in Violation of *Miranda*

In his second ground for habeas relief, Petitioner alleges the trial court erroneously admitted evidence of admissions he made during jail booking interviews.[6] (Doc 22 at 2.) Respondent counters any violation of Petitioner's constitutional rights was harmless pursuant to *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). (Doc. 27 at 22-23.)

### A. Standard of Review

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. v. Pursuant to *Miranda*, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless" the defendant was advised of his rights and waived them. *Miranda*, 384 U.S. 436, 444-45. For the purpose of *Miranda*, "interrogation" refers both to express questioning, and "to any words or actions on the part of the police" that they "*should have known* were reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 300, 301 (1980) (emphasis in original). However, the "booking questions exception" exempts "from

---

[6] Petitioner raised this claim on direct appeal with the Court of Appeal (Lodged Doc. 3); however, he did not raise the claim in his petition for review with the California Supreme Court (Lodged Doc. 7). Petitioner raised the claim again in his state petition for writ of habeas corpus (Lodged Doc. 13), which the California Supreme Court rejected, citing *In re Waltreus*, 62 Cal. 2d 218, 225 (1965), and *In re Lindley*, 29 Cal. 2d 709, 723 (1947). In *Waltreus*, the California Supreme Court held that "habeas corpus ordinarily cannot serve as a second appeal." 62 Cal. 2d 218. Therefore, under the *Waltreus* rule, the California Supreme Court will not review a claim in a habeas petition that was raised on direct appeal. However, the California Supreme Court's reliance on *Waltreus* does not bar federal review. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) ("Since a later state decision based upon ineligibility for further state review neither rests upon procedural default nor lifts a pre-existing procedural default, its effect upon the availability of federal habeas is nil. . . .") Consequently, the Court will look through the California Supreme Court's denial of the claim pursuant to *Waltreus* to the last reasoned state court opinion—the June 18, 2015 opinion of the Court of Appeal.

16

*Miranda*'s coverage questions to secure the biographical data necessary to complete booking or pretrial services." *Pennsylvania v. Muniz*, 496 U.S. 582, 601 (1990) (internal citations and quotation marks omitted).

Errors by state trial courts in admitting into evidence statements taken in violation of *Miranda* are subject to a harmless error analysis. *Juan H. v. Allen*, 408 F.3d 1262, 1271 n. 9 (9th Cir. 2005). Under that analysis, habeas relief is warranted if the error "had a substantial and injurious effect or influence in determining the verdict." *Brecht*, 507 U.S. at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

**B.  State Court of Appeal Opinion**

At trial, defense counsel moved to suppress gang admissions Petitioner made during booking procedures. *Blount*, (No. F066744), at 16. The trial court denied the motion, and the Court of Appeal held the admission of these statements was not prejudicial. *Id.*

> During the trial, Holcombe testified he reviewed booking records for the [co-defendants] and found two significant records for each of [them]. In [Petitioner's] booking records, he identified himself with the Crips and a "keep-away" from the Bloods. . . . Based, in part, on his review of the booking information, Holcombe opined [the co-defendants] were active members of the Country Boy Crips on the day of the Lopez burglary.

> During cross-examination by [Petitioner's] defense counsel, Holcombe confirmed that booking questions were given for the safety of the facilities, and suspects were asked if they needed to be kept away from somebody.

> **A.  Standard of Review.**

> Under the requirements set forth in *Miranda*, a person may not undergo "custodial interrogation" unless that person knowingly and intelligently waives the right to remain silent, the right to presence of legal counsel, and the right to appointed counsel if the person is indigent. (*People v. Sims* (1993) 5 Cal.4th 405, 440, citing *Miranda*, *supra*, 384 U.S. at pp. 444-445.) However, *Miranda* does not pertain to a "'routine booking question'" that secures the "'biographical data necessary to complete booking or pretrial services.'" (*Pennsylvania v. Muniz* (1990) 496 U.S. 582, 601 (*Muniz*).)

> *Muniz* recognizes that questions which are reasonably related to law enforcement's administrative concerns do not require *Miranda* warnings. (*Muniz*, *supra*, 496 U.S.

17

at pp. 601-602.) *Muniz*, however, cautioned this exception does not apply to all questions asked during the booking process; instead, a *Miranda* waiver is still required for any questions, even during booking, which "'are designed to elicit incriminatory admissions.' [ ]" (*Id*. at p. 602, fn. 14.)

**B. Analysis.**

. . .

In *People v. Elizalde* (June 25, 2015, S215260) _ Cal.4th _ our Supreme Court held that booking questions regarding gang affiliation do not fall under the narrow booking exception to *Miranda*. (*Id*. at pp. 17-19.) Without *Miranda* warnings, a defendant's answers to gang questions posed during a booking procedure are inadmissible in the prosecution's case-in-chief. (*Id*. at p. 21.)

Here, the prosecution introduced at trial [co-defendants'] respective unadmonished gang admissions made during various booking procedures. Thus, the Fifth Amendment was violated. (*People v. Elizalde*, *supra*, _ Cal.4th _ [pp. 21-22].) . . .

*Elizalde* held that such erroneous admissions must be reviewed for prejudice under the standard set forth in *Chapman v. California*, 386 U.S. 18. (*People v. Elizalde*, *supra*, _ Cal.4th _ [pp. 22].) That standard requires the government "'to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' [ ]" (*Ibid*.) That burden is satisfied on this record. The [co-defendants'] respective gang participation was established beyond their booking statements.

In order to prove a defendant "actively participates" in a criminal street gang for conviction under section 186.22, subdivision (a), it is sufficient if the evidence establishes the defendant's involvement with the gang was more than nominal or passive. (*People v. Castenada* (2000) 23 Cal.4th 743, 747.) A defendant does not have to occupy a leadership position in the gang for conviction. (*Ibid*.) Indeed, a person does not have to be a gang member to be guilty of section 186.22, subdivision (a). (*In re Jose P.* (2003) 106 Cal.App.4th 458, 466.)

**a. Trial evidence regarding [Petitioner's] gang participation.**

[Petitioner] wore a "Country Boy" tattoo across his chest, along with a "W" and "Watts" on his right shoulder and an "L" and "Lotus" on his left shoulder. FN15 Another gang member identified [Petitioner] as a member of the Country Boy Crips, and [Petitioner] had multiple arrests and encounters with law enforcement while in the company of other known gang members. [Petitioner] had at least two previous arrests for residential burglary, which Holcombe noted was a primary criminal activity of the gang. [Petitioner] was previously arrested for possession of a loaded firearm, which Holcombe explained was used by gang members for protection and to increase status. [Petitioner's] home was searched, revealing a single live .40-caliber round of ammunition and pow[d]er[ ] blue clothing, the primary color of the

Country Boy Crips.

FN15 The jury was shown photographs of [Petitioner's] tattoos.

. . .

Therefore, apart from the booking admissions, the evidence clearly established [the co-defendants'] active participation with the Country Boy Crips, which was more than passive or nominal. Thus, there was substantial evidence to prove a violation of section 186.22, subdivision (a), as to [the co-defendants]. This conclusion is not altered because the jury did not find true the gang enhancement under section 186.22, subdivision (b). FN 21 This conclusion is also not affected by the length of the jury's deliberations, which [Petitioner] argues shows this was a close case. It is beyond a reasonable doubt the admission of [the co-defendants'] various booking statements was harmless. (*People v. Sims*, *supra*, 5 Cal.4th at p. 447 [harmless error standard of *Chapman* used to analyze the prejudicial effect of a defendant's erroneous admission].)

FN21 Section 186.22, subdivision (b), requires a showing of "specific intent to promote, further, or assist in any criminal conduct by gang members . . . ." (§ 186.22, subd. (b)(1); *People v. Romero* (2006) 140 Cal.App.4th 15, 19.)

*Blount*, (No. F066744), at 16-27, Lodged Doc. 6 at 3-5.

## C. The State Court Did Not Err in Rejecting Petitioner's *Miranda* Violation Claim

Petitioner claims the trial court violated the tenets of *Miranda* by admitting Petitioner's statements about his gang affiliations during his booking interview. The Court of Appeal found, pursuant to *People v. Elizalde*, Petitioner's rights were violated by these admissions. (Lodged Doc. 6 at 4) (citing *People v. Elizalde*, 61 Cal. 4th 523, 538 (2015) ("Gang affiliation questions do not conform to the narrow [booking questions] contemplated . . . for basic identifying biographical data necessary for booking or pretrial services.")) Similarly, the Ninth Circuit has determined that questions regarding a defendant's gang affiliation constitute interrogation that does not fall within the booking questions exception to *Miranda*'s requirements. *United States v. Williams*, 842 F.3d 1143, 1147-48 (9th Cir. 2016).

However, the erroneous admission of statements taken in violation of a defendant's Fifth Amendment rights is subject to harmless error analysis on federal habeas review. *Juan H.*, 408

19

F.3d at 1271 n. 9. "Under this test, relief is proper only if the federal court has 'grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict.'" *Davis v. Ayala*, 135 S. Ct. 2187, 2197 (2015) (quoting *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995)).

Here, Petitioner was convicted of promoting felony street gang conduct (Cal. Penal Code. § 186.22(a)). Pursuant to California Penal Code §186.22(a),

> Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished by imprisonment . . . .

Therefore, the evidence adduced at trial had to establish that Petitioner "actively participate[d]" in a criminal street gang.

Petitioner's admissions regarding his gang membership during the booking interview were used to establish his active participation in the Country Boy Crips; however, other evidence adduced at trial also established that he actively participated in a criminal street gang. Petitioner had a "Country Boy" tattoo across his chest, a photograph of which was shown to the jury. Another gang member identified Petitioner as a member of the Country Boy Crips, and Petitioner had multiple arrests with other gang members. Petitioner committed the burglary underlying the present habeas petition with Randle, an admitted Country Boy Crip gang member.

Based on the evidence of Petitioner's gang membership that is independent of the statements made during the booking interview, the Court cannot say that the improper admission of Petitioner's booking interview statements had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. Therefore, although the admission of Petitioner's statements at the booking interview violated his constitutional rights, any error in admitting these statements was harmless based on the other evidence of Petitioner's active gang participation.

20

Accordingly, although the trial court erred by admitting Petitioner's booking interview statements, the error was harmless because it did not have a substantial effect or influence on the jury in determining the verdict considering other evidence adduced at trial. For the foregoing reasons, the Court recommends denying Petitioner's claim.

## V. The Trial Court Did Not Err When it Engaged in *Ex Parte* Communication with the Jury

In his third ground for habeas relief, Petitioner alleges the trial court erred when it engaged in *ex parte* communication with the jury.[7] (Doc. 22 at 2, 17.) Further, Petitioner claims the *ex parte* communication denied him his right to be present during all critical states of the trial and the right to be represented by counsel. *Id*. In sum, Petitioner is alleging his Sixth Amendment right to counsel was violated by the trial court's communication with the jury. Respondent counters that even if the trial court violated Petitioner's right to be represented by counsel in communicating with the jury absent Petitioner and counsel, the error was harmless and does not warrant habeas relief. (Doc. 27 at 31.)

### A. Standard of Review

The Sixth Amendment guarantees those accused of a crime the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685 (1985). The "accused is guaranteed that he need not stand alone against the State at any stage of prosecution, formal or informal, in court or out, where counsel's absence would derogate from the accused's right to a fair trial." *United States v. Wade*, 388 U.S. 218, 224 (1967). To satisfy the Sixth Amendment, counsel must be present at all "critical stages" of the prosecution, absent an intelligent waiver by the defendant. *Id*. at 226;

---

[7] Petitioner raised this claim on direct appeal with the Court of Appeal (Lodged Doc. 3); however, he did not raise the claim in his petition for review with the California Supreme Court (Lodged Doc. 7). Petitioner raised the claim again in his state petition for writ of habeas corpus (Lodged Doc. 13), which the California Supreme Court rejected, citing *Waltreus*, 62 Cal. 2d at 225, and *Lindley*, 29 Cal. 2d at 723. The Court will look through the California Supreme Court's denial of the claim pursuant to *Waltreus* to the last reasoned state court opinion, the June 18, 2015 opinion of the Court of Appeal.

*United States v. Hamilton*, 391 F.3d 1066, 1070-71 (9th Cir. 2004). "Critical stages" of a prosecution include arraignments, post-indictment identification lineups, hearing on pretrial motion to suppress evidence, sentencing, court-ordered psychiatric examinations to determine competency to stand trial, the decision whether to plead guilty, and the process of plea bargaining. *Hamilton*, 391 F.3d at 1070 (citing cases).

## B. <u>State Court of Appeal Opinion</u>

The Court of Appeal rejected Petitioner's claim that the trial court erred in conducting *ex parte* communication with the jury, as follows:

> On January 9, 2013, upon the jury's release to begin deliberations the trial court notified the parties that they would be informed if the jury submitted a note. Two days later, on Friday, January 11, 2013, the trial court received a note from the jury. The note read: "Need testimony between Off. Holcombe and D.A. [prosecutor]. Also need explanation from Judge Lua on Count # 2 in regards to Jury Instructions."

> At 10:25 a.m. that same morning, the court clerk notified counsel of the jury's note regarding both the question and the request for readback, and counsel agreed to the court responding in writing.

> At some point that same morning, the trial judge entered the jury deliberation room and spoke with the jury on the record without any of the [co-defendants] or their respective counsel present. The judge indicated he needed clarification to respond to the jury's note and asked if they wanted readback of Holcombe's testimony when he was initially questioned by the prosecutor or every time the prosecutor questioned Holcombe. An unidentified juror responded and the following exchange occurred:

> "THE JUROR: What we are trying to establish is the dates and times of the conviction.

> "THE COURT: I just want to know if it's the initial direct examination or is it also redirect examination?

> "THE JUROR: Redirect examination, also. Yes.

> "THE COURT: Okay. In a moment my reporter will begin reading the testimony that you have requested, including direct examination and redirect examination when necessary. While she is reading the examination to you or the testimony to you, you cannot interrupt her, nor can you ask her any questions such as can you please repeat what you just stated, start over, or go to

22

a different area.  She can only read it one time from beginning to end, and she will cover those areas that are expressly stated in the note received.  If you want her to repeat any portions or the note received.  If you want her to repeat any portions or address different witnesses, you must accompany that with another note that we will then accomplish for you.  While she is in the jury deliberation room, you cannot deliberate in her presence either.   So you cannot discuss anything about the case or ask her any questions or any other people any questions.

"Once she is done, she will gather her equipment and leave the jury deliberation room, and then you can resume jury deliberations.

"The note received also had another question to it or request to it.  I have answered that on this paper, and I will leave it with you folks to review.  You can read it and review it after my reporter leaves.
"Okay.  Good luck.

"THE JUROR:          Thank you."

The judge's written answer to the jury's note read: "Please refer to CALCRIM [No.] 1400[8] and its accompanying instructions – Judge Lua."

After the weekend break, the jury indicated it had reached a verdict on Monday, January 14, 2013, as of 9:16 a.m.  Prior to bringing the jury into the courtroom, the trial court memorialized what occurred on January 11, 2013, regarding the jury's note.  The trial judge noted that each person, or their representative, had been contacted regarding the note and explained that he wrote an answer to the jury, and he read his answer verbatim in court.  The Court also explained that he went into the jury room to admonish the jury about the readback procedure, and he noted that the

---

[8] CALCRIM No. 1400 defines active participation in a street gang pursuant to California Penal Code § 186.22(a).  In part, the instruction reads:

The defendant is charged . . . with participating in a criminal street gang [in violation of Penal Code section 186.22(a)].

To prove that the defendant is guilty of this crime, the People must prove that:

1.  The defendant actively participated in a criminal street gang;
2.  When the defendant participated in the gang, (he/she) knew that members of the gang engage in or have engaged in a pattern of criminal gang activity; AND
3.  The defendant willfully assisted, furthered, or promoted felonious criminal conduct by members of the gang by:
    a.  directly and actively committing a felony offense; OR
    b.  aiding and abetting a felony offense.

23

readback process took a while to complete, with deliberations resuming "around 2:30 that afternoon, if not 2:45."

Randle's defense counsel requested a mistrial because the trial court entered the jury room without asking the attorneys for their agreement. Randle's counsel argued that the court's actions were improper "and may have violated my client's Sixth and Fourteenth Amendment right to a fair trial." The court denied the motion without comment.

*Blount*, (No. F066744), at 28-30.

Here, Petitioner contends the trial court violated his Sixth Amendment rights by clarifying the jury's request for a readback of jury instruction CALCRIM No. 1400, without Petitioner or his attorney present. The Court of Appeal analyzed the claim as follows:

## A. Standard of review.

### 1. The trial court's communication with the jury.

A trial court should not communicate with the jury except in open court and with prior notification to counsel. (*People v. Clark* (2011) 52 Cal.4th 856, 987 (*Clark*); *People v. Jennings* (1991) 53 Cal.3d 334, 384 (*Jennings*).) "'"This rule is based on the precept that a defendant should be afforded an adequate opportunity to evaluate the propriety of a proposed judicial response in order to pose an objection or suggest a different reply more favorable to the defendant's case."' [ ]" (*Jennings*, *supra*, 53 Cal.3d at p. 384.)

Ex parte communication between the judge and jurors typically violates a defendant's right to be present, and represented, at all critical stages of trial. (*Clark*, *supra*, 52 Cal.4th at p. 987.) If the trial court has an improper ex parte communication with the jury, reversal is required unless the error was harmless beyond a reasonable doubt. (*Ibid.*; *Jennings*, *supra*, 53 Cal.3d at pp. 383-384.)

### 2. [California Penal Code] Section 1138.

[California Penal Code] Section 1138 provides: "After the jury have retired for deliberation, if there be any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court. Upon begin brought into court, the information required must be given in the presence of, *or after notice to*, the prosecuting attorney, and the defendant or his counsel, or after they have been called." (Italics added.)

Section 1138 requires notice to be given to the defendant and his counsel of any proceedings during the deliberative process. (*People v. Garcia* (2005) 36 Cal.4th 777, 802 (*Garcia*); *People v. Jenkins* (2000) 22 Cal.4th 900, 1027 (*Jenkins*).) This

ensures that counsel has the opportunity to suggest an alternative course for the trial court to take or to object to the court's course of action. (*Garcia*, *supra*, 36 Cal.4th at p. 802; *Jenkins*, *supra*, 22 Cal.4th at p. 1027.)

A trial court is required to instruct a deliberating jury regarding any point of law in the case if the jury so requests. (*People v. Waidla* (2000) 22 Cal.4th 690, 746 (*Waidla*).) The trial court has a primary duty to assist the jury in understanding the legal principles it is asked to apply. (*People v. Beardslee* (1991) 53 Cal.3d 68, 97 (*Beardsless*).) The court, however, is not required to elaborate on the standard jury instructions if the original instructions are full and complete. (*Ibid.*) In such a situation, the trial court has discretion under section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for additional information. (*Ibid.*) As our Supreme Court has noted, it is often risky for a trial court to offer comments that diverge from the standard instructions. (*Ibid.*) "'When a question shows the jury has focused on a particular issue, or is leaning in a certain direction, the court must not appear to be an advocate, either endorsing or redirecting the jury's inclination.' [ ]" (*People v. Montero* (2007) 155 Cal.App.4th 1170, 1180 (*Montero*).)

"An appellate court applies the abuse of discretion standard of review to any decision by a trial court to instruct, or not to instruct in its exercise of its supervision over a deliberating jury." (*Waidla*, *supra*, 22 Cal.4th at pp. 745-746.)

. . .

## 2. The trial court's written supplemental instruction was not in error.

Both [Petitioner] and Randle contend the jury was confused or puzzled regarding the legal instructions, and with proper notice counsel could have assisted in the process of determining the source of the jury's confusion. Randle further argues the trial court should have questioned the jury on this issue given its "ambiguous" request. They both assert the trial court did not do enough to assist the jury and the presence of counsel was critical.

The court, however, notified all counsel regarding the jury's request for further instruction. The record does not establish any counsel objected or offered input regarding how the trial court should respond other than authorizing the court to respond in writing. When the court reconvened with the parties, the court read its written response and no objection was lodged to the substance of the response. As such, we reject [Petitioner's] and Randle's respective arguments that their counsel were not "properly notified" of the jury's request for clarification or an injustice occurred because counsel was not permitted to give input.

Further, despite [Petitioner's] arguments to the contrary, nothing from the jury's note indicated it was confused. The jury was not prohibited from asking the court more questions if it so needed and it is speculative to presume otherwise. (*Beardslee*, *supra*, 53 Cal.3d at p. 98.)

None of the [co-defendants] argue the jury instructions were less than "full and complete" for count 2. Because these jury instructions were full and complete, the trial court had the discretion to reiterate them. (*Beardslee*, *supra*, 53 Cal.3d at p. 97; *People v. Montero*, *supra*, 155 Cal.App.4th at p. 1179.) By responding to the jury's note and advising them to focus on CALCRIM No. 1400, the trial court did not figuratively throw up its hands and tell the jury it could not help, as [Petitioner] contends. The court provide the jury with the complete information it needed without appearing as an advocate, either endorsing or redirecting the jury. (*Montero*, *supra*, at p. 1180.) Under the circumstances, the trial court did not abuse its discretion when it responded to the jury's note and directed them to reread CALCRIM No. 1400.

### 3. [Co-Defendants] cannot establish prejudice from the scope of readback or the supplemental instruction given to the jury.

Even if error occurred regarding the scope of readback or the supplemental instruction, [the co-defendants] cannot establish prejudice. They contend [the felony street gang conduct charge] must be reversed under a *Chapman* analysis, and Jackson and Randle further argue [the first degree burglary charge] should also be reversed. These arguments are unpersuasive.

As discussed earlier, this was not a close case regarding [the co-defendants'] guilt in [the felony street gang conduct charge] due to the evidence linking [Petitioner] to the crime scene, the three males observed in [Petitioner's] vehicle just before the crime, the location of [the co-defendants] when apprehended just after the crime, and Andrew's unequivocal trial identifications. Further, as discussed earlier, the evidence was overwhelming regarding the [co-defendants'] guilt in [the first degree burglary charge] as active participants with the Country Boy Crips. . . . It is beyond a reasonable doubt any error associated with the readback of testimony or the supplemental instruction was harmless.

### 4. The ex parte meeting by itself does not require reversal.

[Petitioner] asserts the judge's ex parte communication with the jury requires reversal, citing *United States v. United States Gypsum Co.* (1978) 438 U.S. 422 (*Gypsum*); *United States v. Collins* (2nd Cir. 2012) 665 F.3d 454 (*Collins*); and *People v. Steward* (1983) 145 Cal.App.3d 967 (*Stewart*). These authorities are unpersuasive.

In *Gypsum*, *supra*, 468 U.S. 422, the jury began deliberations after nearly five months of testimony. On the morning of the seventh day of deliberations, following apparent disagreements and confusion among the jurors, the foreman asked to meet with the judge to discuss the jury's condition and get guidance. (*Id*. at p. 460.) The judge met with counsel and suggested he should meet with the foreman alone, and counsel agreed. The judge met with the foreman, who made several references the jury was deadlocked. The judge made an impression on the foreman that he wanted a verdict "'one way or the other.'" (*Ibid*.) After the meeting, the judge summarized a report to counsel, which did not reference either of these two issues.

On appeal, the *Gypsum* court found reversible error because the trial judge exposed himself to a conversation which caused unintended and misleading impressions of his personal views without the presence of counsel to challenge his statements. (*Gypsum*, *supra*, 438 U.S. at p. 460.) In addition, the judge's communication to the jury panel went through the foreman, which risked innocent misstatements of the law and misinterpretations. Finally, the absence of counsel from the meeting, and the unavailability of a transcript, prevented counsel an opportunity to clear up confusion regarding the judge's direction to the foreman. (*Id*. at p. 461.) *Gypsum* emphasized it was not simply the ex parte meeting with the foreman which constituted error, but the fact the discussion was allowed to drift into a supplemental instruction to the foreman without counsel present to correct any mistaken impression. (*Id*. at p. 462.)

In *Collins*, *supra*, 665 F.3d 454, the trial judge had an ex parte meeting with a juror after receiving a note indicating this juror was involved in a hostile exchange with another juror the day before. The judge informed counsel of his intention to talk to the juror, but failed to disclose the contents of the note. (*Id*. at p. 458.) During his meeting with this juror, the judge stated his displeasure over the juror's reported conduct. (*Ibid*.) On appeal, the *Collins* court determined the judge made statements to the juror that amounted to a supplemental instruction, and if found reversible error because the court failed to disclose the contents of the note to the defendant and counsel before meeting with the juror. (*Id*. at p. 462.)

Here, unlike in both *Collins* and *Gypsum*, the trial judge did not provide any supplemental instruction to the jury without counsel's authorization. Also, unlike in *Gypsum*, the judge did not engage in a conversation with any member of the jury panel which might have caused unintended and misleading impressions of his personal views. (*Gypsum*, *supra*, 438 U.S. at p. 460.) To the contrary, the judge refrained from questioning the jury or offering any opinion. Further, unlike in *Gypsum*, the judge spoke to the entire jury panel and not through a single source, which could have caused further miscommunication. Finally, unlike in *Gypsum*, a full transcript exists regarding the judge's interaction with the jury, and the trial court accurately summarized to counsel his exchange with the jury.

*Gypsum* and *Collins* are inapposite because the judge's interaction with the jury did not drift into supplemental instruction. *Gypsum* and *Collins* do not dictate reversal of the instant case even though counsel did not receive notice of the judge's plan to meet with the jury.

Finally, in *Stewart*, *supra*, 145 Cal.App.3d 967, the judge received a note from the deliberating jury requesting a reread of certain jury instructions and a preference for a written copy. The judge delivered the requested instructions to the jury without advising counsel. (*Id*. at p. 972.) The *Stewart* court held it was error for the judge to communicate with the jury without the presence of counsel, noting the court violated section 1138. (*Stewart*, *supra*, at p. 972.) Reversal was not required, however, because the appellate court found the error harmless. (*Id*. at pp. 973-974.)

Here, unlike in *Stewart*, the trial judge gave notice to counsel regarding the jury's request for further instruction. Unlike in *Stewart*, the judge did not violate section 1138. *Stewart* is distinguishable and does not require reversal.

### 5. Although the trial court erred by not obtaining [co-defendants'] personal waivers, [the co-defendants] cannot establish prejudice.

Randle concedes he did not have a constitutional right to be personally present during the actual readback of testimony. (*People v. Ayala* (2000) 23 Cal.4th 225, 288 [a readback of testimony is not a critical stage].) He contends, however, he had a personal right to be present when the judge met with the jury, which was not waived despite his counsel's consent that the court could respond to the jury in writing. [Petitioner]makes a similar argument, asserting a defendant's presence may be required when the judge communicates with a deliberating jury.

A defendant has the constitutional right to be present at any stage which bears "a reasonable and substantial relationship to his ability to defend the charges against him." (*People v. Davis* (2005) 36 Cal.4th 510, 531 (*Davis*).) A critical stage exists when the trial judge meets with the jury to provide instruction. (*Bradford*, *supra*, 154 Cal.App.4th at p. 1410.) In California, defendants also have a statutory right under section 977[9] to be present when the judge meets with the jury. (§ 977, subd. (b)(1); see also *People v. Avila* (2006) 38 Cal.4th 491, 598 (*Avila*) [violation of § 977 occurred where felony defendant was absent from readback of testimony without written waiver].)

Here, [the co-defendants] had both a statutory and constitutional right to be personally present when the trial court met with the jury. This record does not demonstrate [the co-defendants] gave personal waivers regarding those rights. This was error. (*Avila*, *supra*, 38 Cal.4th at p. 598; *Davis*, *supra*, 36 Cal.4th at p. 531.)

[The co-defendants], however, cannot establish prejudice. The constitutional error requires analysis under *Chapman* while the error under section 977 is state law and is reversible under *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*). (*Davis*, *supra*, 36 Cal.4th at pp. 532-533.) None of the [co-defendants] offer any argument establishing how their respective presence would have impacted their ability to defend against the charges. Indeed, it is difficult to imagine how [co-defendants'] personal presence during the trial court's brief meeting with the jury would have changed the outcome of this trial. The court's failure to notify [the co-defendants] personally about his ex parte meeting is of no consequence, especially because all defense counsel received notice of the jury's note and failed to provide input. It is beyond a reasonable doubt this error was harmless and [the co-defendants] are not

---

[9] Pursuant to California Penal Code § 977(b)(1):

> [I]n all cases in which a felony is charged, the accused shall be personally present at the arraignment, at the time of plea, during the preliminary hearing, during those portions of the trial when evidence is taken before the trier of fact, and at the time of the imposition of sentence. The accused shall be personally present at all other proceedings unless he or she shall, with the leave of court, execute in open court, a written waiver of his or her right to be personally present . . . .

entitled to reversal under either *Chapman*, *supra*, 386 U.S. at page 24, or *Watson*, *supra*, 46 Cal.2d at page 836.

*Blount*, (No. F066744), at 36-41.

## C. The State Court Did Not Err in Rejecting Petitioner's *Ex Parte* Communication Claim

Concurring in a U.S. Supreme Court opinion regarding *ex parte* communication, Justice Stevens observed:

> the mere occurrence of an *ex parte* conversation between a trial judge and a juror does not constitute a deprivation of any constitutional right. The defense has no constitutional right to be present at every interaction between a judge and a juror . . . .

*Rushen v. Spain*, 464 U.S. 114, 125-26 (1983) (Stevens, J., concurring in judgment). However, "[w]hen an ex parte communication relates to some aspect of the trial, the trial judge generally should disclose the communication to counsel for all parties." *Id*. at 119. "The substance of the *ex parte* communications and their effect on juror impartiality are question of historical fact entitled to [the] presumption [of correctness];" therefore, "they must be determined, in the first instance, by state courts and deferred to, in the absence of 'convincing evidence' to the contrary, by the federal courts." *Id*. (internal citation omitted).

Here, the Court of Appeal concluded that the jury was not biased by the trial court answering its question in the absence of Petitioner and his counsel. "This finding of 'fact' – on a question that state courts were in a far better position than the federal courts to answer – deserves a 'high measure of deference.' And may be set aside only if it 'lack[s] even 'fair support' in the record.'" *Id*. (quoting *Sumner v. Mata*, 455 U.S. 591, 598 (1982), *Marshall v. Lonberger*, 459 U.S. 422, 432 (1983)).

This Court must consider whether the *ex parte* communication occurred at a "critical stage" of Petitioner's trial at which defense counsel's presence was required. The U.S. Supreme Court has not identified *ex parte* communication between juror and judge as a "critical stage" of trial.

29

Indeed, the Supreme Court has acknowledged that the absence of defense counsel during an *ex parte* communication between a judge and a juror would not require an automatic reversal. *Rushen*, 464 U.S. 114.

In the absence of Supreme Court authority suggesting that *ex parte* communication between judge and juror occurred at a "critical stage" of the trial, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Therefore, the Court recommends denying Petitioner's claim.

## VI. The State Court Did Not Err in Admitting Gang Evidence

In Petitioner's fourth ground for relief, he alleges the trial court erred when it did not accept, or require the prosecution to accept, a stipulation offered by defense counsel that the Country Boy Crips constituted a gang within the meaning of California Penal Code § 186.22(a).[10]  (Doc. 22 at 15.)  Respondent counters the claim is not cognizable on federal habeas review, because Petitioner is asserting a violation of state law.  (Doc. 27 at 39.)

### A. State Court of Appeal Opinion

The Court of Appeal held that the trial court did not err in declining to accept or require the prosecution to accept Petitioner's proposed stipulation that the Country Boy Crips is a criminal street gang:

> The amended information alleged as to count 1, that [the co-defendants] committed the burglary for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)).  The information also charged [the co-defendants] in count 2 with active participation in a criminal street gang (§ 186.22, subd. (a)).
>
> Before trial, [Petitioner's] defense counsel offered to stipulate that the Country Boy Crips was a criminal street gang within the meaning of section 186.22, subdivision (a).  The proposed stipulation was that the gang engages, and has engaged, in a

---

[10] Petitioner raised this claim on direct appeal with the Court of Appeal (Lodged Doc. 3); however, he did not raise the claim in his petition for review with the California Supreme Court (Lodged Doc. 7).  Petitioner raised the claim again in his state petition for writ of habeas corpus (Lodged Doc. 13), which the California Supreme Court rejected, citing *Waltreus*, 62 Cal. 2d at 225, and *Lindley*, 29 Cal. 2d at 723.  The Court will look through the California Supreme Court's denial of the claim pursuant to *Waltreus* to the last reasoned state court opinion—the June 18, 2015 opinion of the Court of Appeal.

30

pattern of criminal behavior, including enumerated crimes listed in the statute. The prosecutor indicated he would not enter into a stipulation to the existence of the gang or a pattern of criminal activity.

The court asked if the stipulation would include that [the co-defendants] were active participants in a criminal street gang, and all defense counsel declined to include that addition. [Petitioner's] counsel indicated the prosecution would still have to prove [the co-defendants] were active participants on the date of the offense and they did the offense for the benefit of a gang. The trial court noted the following:

> . . .

> "Recognizing under 352,[11] as the Court has already balanced in some form or another, the gang evidence in this case, the Court is not going to require the People to agree to that stipulation because it does not do much more than save an insignificant amount of time in this court's view, and, more importantly, the jury would still hear evidence substantially similar to the predicate offenses necessary under all the gang expert's training and experience, as well as the gang expert still testifying as to reasons why he believes the defendants are members or active participants in the criminal street gang.

> "For those reasons, the stipulation will be set aside and not entertained by the Court since there is not an agreement between the parties as a whole. . . ."

### A. Standard of Review

#### 1. [California Penal Code] Section 186.22.

[California Penal Code] Section 186.22 is part of the California Street Terrorism Enforcement and Prevention Act of 1988, which defines a criminal street gang as "any ongoing organization, association, or group of three or more persons, whether formal or informal" that has as one of its "primary activities" the commission of one or more statutorily enumerated criminal offenses and which its members engage in a "pattern of criminal gang activity." (§ 186.22, subd. (f); accord, *People v. Sengpadychith* (2001) 26 Cal.4th 316, 323 (*Sengpadychith*).) The trier of fact may consider both the past conduct of gang members and the circumstances of the present or charged offenses to determine the group's primary activities. (*Sengpadychith*, *supra*, at p. 323.) A "pattern of criminal gang activity" requires a showing that the gang committed, or attempted to commit, two or more enumerated crimes on separate occasions, or by two or more persons. (§ 186.22, subd. (e).)

---

[11] Pursuant to California Evidence Code § 352,

> [t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issue, or of misleading the jury."

Section 186.22, subdivision (a), reads as follows: "Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished by imprisonment in a county jail for a period not to exceed one year, or by imprisonment in the state prison for 16 months, or two or three years."

Section 186.22, subdivision (b)(1), adds a sentence enhancement for "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members. . . ."

## 2. Stipulations.

An appellate court applies an abuse of discretion standard to review a trial court's ruling on the admissibility of evidence. (*Waidla*, *supra*, 22 Cal.4th at p. 724.) "'Under the abuse of discretion standard, "a trial court's ruling will not be disturbed, and reversal . . . is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." [ ]' [ ]" (*People v. Foster* (2010) 50 Cal.4th 1301, 1328-1329.)

"'The general rule is that the prosecution in a criminal case cannot be compelled to accept a stipulation if the effect would be to deprive the state's case of its persuasiveness and forcefulness.' [ ]" (*People v. Chism* (2014) 58 Cal.4th 1266, 1307.) A trial court is not authorized to enforce a stipulation over the prosecutor's objection. (*People v. Rogers* (2013) 57 Cal.4th 296, 329 (*Rogers*).) "'[A] criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it.'" (*Id*. at p. 330).

## B. Analysis

[Co-defendants'] proposed stipulation would have avoided admission of the predicate offenses and primary activities necessary to establish the Country Boy Crips as a criminal street gang. (§ 186.22, subds. (e) & (f).) The proposed stipulation, however, would have still required proof [co-defendants]: (1) actively participated in a criminal street gang; (2) knew that members of the gang engaged in a pattern of criminal gang activity; and (3) willfully promoted, furthered, or assisted in felonious criminal conduct by members of the gang. (§ 186.22, subd. (a).) In addition, evidence was still required to establish the burglary was committed for the benefit of, at the direction of, or in association with a criminal street gang with the specific intent to promote, further, or assist criminal conduct by gang members. (§ 186.22, subd. (b).)

After learning the proposed stipulation failed to include that [the co-defendants] were each an active participant in a criminal street gang, and the prosecution would still have to prove they did the offense for the benefit of a gang, the trial court determined the proposed "partial stipulation" would not save a significant amount

of time.

The court noted the jury would still hear evidence necessary for the gang expert's training, experience and opinions, as well as the reasons why the expert believed [the co-defendants] were active participants in a gang. The court balanced the competing interests under Evidence Code section 352. Based on this record, the court did not exercise its discretion arbitrarily, capriciously, or in a patently absurd manner when it considered the merits of the proposed stipulation and declined to force the prosecutor to accept it.

[Petitioner], however, principally relies on *People v. Sherren* (1979) 89 Cal.App.3d 752 (*Sherren*), . . ., to establish the trial court abused its discretion and was required to accept the stipulation. This reliance is misplaced.

*Hall*, *supra*, 28 Cal.3d 143 and *Sherren*, *supra*, 89 Cal.App.3d 752 . . . dealt with prosecutions of a felon in possession of a firearm under former section 12021.24 (*Hall*, *supra*, at p. 147; *Sherren*, *supra*, at p. 755.) These cases held in a prosecution under former section 12021 the element of a prior felony conviction could not be given to the jury if the defendant stipulated to that fact. (*Hall*, *supra*, at p. 156; *Sherren*, *supra*, at p. 760.) However, Proposition 8 abrogated these holdings when it required, in part, a prior felony conviction to be proven in open court when it is an element of any felony offense. (Cal. Const., art. I, § 28, subd. (f); see also *People v. Cunningham* (2001) 25 Cal.4th 926, 984.)

Here, [Petitioner] contends the rationale in *Hall* should apply and require the prosecution to accept a defense stipulation if it involves a fact of consequence to the case. This argument is unpersuasive given abrogation of *Hall*'s holding and in light of current Supreme Court authority that the prosecution in a criminal case cannot be compelled to accept a stipulation if the effect would be to deprive the state's case of its persuasiveness and forcefulness. (*People v. Chism*, *supra*, 58 Cal.4th at p. 1307.) Moreover, the Supreme Court has noted a trial court is not authorized to enforce a stipulation over the prosecutor's objection. (*Rogers*, *supra*, 57 Cal.4th at p. 329.) *Hall* and *Sherren* do not establish error in the present matter.

. . .

Finally, in *Old Chief*, *supra*, 519 U.S. 172, the United States Supreme Court held a criminal defendant could stipulate to the existence of a felony conviction when charged with the federal equivalent of felon in possession of a firearm. *Old Chief* determined a defendant's offer to stipulate to an element of a crime is relevant evidence that must be factored into a district court's analysis under rule 403 of the Federal Rules of Evidence. (*Old Chief*, *supra*, at pp. 183-184.)

Here, the trial court complied with the requirements of *Old Chief* when it factored [co-defendants'] proposed stipulation into its analysis of prejudice. [Petitioner], however, cites to *Old Chief* and contends the trial court "should have discounted the probative value of the prior conviction evidence based on the proposed stipulation and then weighted that discounted value against the considerable prejudice the

defendant would have suffered from the disclosure of the facts underlying the earlier conviction." *Old Chief*, however, makes no such pronouncement and does not require reversal of the instant matter.

### 1. [The co-defendants] cannot establish prejudice.

Even if the trial court erred in failing to accept the proposed stipulation, [the co-defendants] cannot establish prejudice. [Petitioner] asserts the evidence of the gang's history and details of its past crimes was prejudicial because it likely caused the jurors to "assume a criminal propensity" against [the co-defendants]. He contends the proposed stipulation would have avoided admission of highly prejudicial evidence without appreciably reducing the forcefulness or persuasiveness of the prosecution's case. [Co-defendants] argue the prejudicial effect requires reversal under a *Watson* standard. These contentions have no merit.

Holcombe testified about the history of the Country Boy Crips gang, how its members establish themselves, and the importance of gang members knowing about the crimes committed by other members. He explained and discussed the "primary activities" of the Country Boy Crips, opined the gang was engaged in an ongoing pattern of criminal conduct, and discussed two predicate offense cases involving known County Boy Crips gang members (not [co-defendants]) who were arrested for residential burglary and possession of narcotics for sale, respectively. This testimony covered approximately 15 pages in the record and fell under the proposed stipulation.

In contrast, Holcombe testified in detail regarding each of the [co-defendants'] relevant criminal gang histories . . . . The testimony about [co-defendants'] criminal backgrounds covered approximately 49 pages in the record. The proposed stipulation eliminated very little testimony of a prejudicial nature as compared to the remaining gang evidence relevant under section 186.22, subdivisions (a) and (b). In light of the detailed evidence regarding [co-defendants'] gang and criminal activities, it is not reasonably probable a result more favorable would have occurred had the trial court forced the prosecutor to accept the stipulation. A miscarriage of justice did not occur requiring reversal.

*Blount*, (No. F066744), at 41-46, 48-49.

### B. Admission of the Gang Evidence Did Not Violate Petitioner's Rights

To the extent Petitioner's claim is predicated on state law, it is not cognizable on federal habeas review. Issues regarding the admission of evidence are matters of state law, generally outside the purview of a federal habeas court. *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009). "The admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process." *Johnson v. Sublett*, 63 F.3d 926, 930

34

(9th Cir. 1995). "[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." *Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6 (1983).

"Although the [U.S. Supreme] Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, see *Williams*, 529 U.S. at 375 . . ., it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley*, 568 F.3d at 1101. Therefore, the Court of Appeal could not have contravened federal law through the admission of the gang evidence when federal law is not clearly established. *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) ([T]his Court has held on numerous occasions that it is not 'an unreasonable application of' 'clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court.").

To the extent Petitioner is making a federal due process claim, the Court recommends denying the claim. Petitioner does not identify any Supreme Court case that forbids the admission of evidence to prove an element of a crime to which the defense is willing to stipulate. Indeed, in cases concerning the interpretation of Rule 403 of the Federal Rules of Evidence,[12] the U.S. Supreme Court has held that a defendant cannot force the prosecution to accept his concession to an element of a charged offense. "[T]he prosecution is entitled to prove its case by evidence of its own choice, or more exactly, that a criminal defendant may not stipulate or admit his way out of the fully evidentiary force of the case as the Government chooses to present it." *Old Chief v. United States*, 519 U.S. 172, 186-87 (1997); *United States v. Allen*, 341 F.3d 870, 888 (9th Cir. 2003) ("outside of felon status cases, the prosecution is entitled to prove its case free from any defendant's

---

[12] Rule 403 of the Federal Rules of Evidence states, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

option to stipulate the evidence away") (internal citations and quotation marks omitted)).

Even if the trial court erred in failing to accept the stipulation and admitting evidence of the Country Boy Crips, Petitioner cannot show the evidence had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. The admission of evidence violates due process "only when 'there are no permissible inferences the jury may draw from the evidence.'" *Windham v. Merkle*, 163 F.3d 1092, 1103 (9th Cir. 1998) (quoting *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991)). Here, the purpose of the stipulation was to avoid admission of gang predicate offenses and primary activities necessary to establish that the Country Boy Crips is a criminal street gang. However, the co-defendants refused to stipulate that each defendant was a member of the Country Boy Crips. Therefore, the prosecutor still had to prove that the co-defendants actively participated in the Country Boy Crips.

Accordingly, Petitioner has failed to establish the admission of this evidence rendered his trial fundamentally unfair. For these reasons, the Court recommends denying the claim.

## VII.  The State Court Did Not Err in Denying Petitioner's Insufficient Evidence Claim

In his fifth ground for habeas relief, Petitioner states there was insufficient evidence to support his conviction for participation in a criminal street gang, because the prosecution failed to prove that the Watts/Lotus Country Boy Crips qualified as a criminal street gang, as opposed to the Country Boy Crips. (Doc. 22 at 17.) Respondent counters this claim is procedurally barred, because Petitioner failed to comply with the California Rules of Court when raising it before the Court of Appeal. (Doc. 27 at 41-42.)

### A.  Standard of Review for Procedural Default

A federal court cannot review claims in a petition for writ of habeas corpus if a state court denied relief on the claims based on state law procedural grounds that are independent of federal law and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "A

district court properly refuses to reach the merits of a habeas petition if the petitioner has defaulted on the particular state's procedural requirements." *Park v. California*, 202 F.3d 1146, 1150 (2000).

A petitioner procedurally defaults his claim if he fails to comply with a state procedural rule or fails to raise his claim at the state level. *Peterson v. Lampert*, 319 F.3d 1153, 1156 (9th Cir. 2003) (citing *O'Sullivan v. Boerckel*, 562 U.S. 838, 844-45 (1999)). The procedural default doctrine applies when a state court determination of default is based in state law that is both adequate to support he judgment and independent of federal law. *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991). An adequate rule is one that is "firmly established and regularly followed." *Id.* (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)); *Bennett v. Mueller*, 322 F.3d 573, 583 (9th Cir. 2003). An independent rule is one that is not "interwoven with federal law." *Park*, 202 F.3d 1146 at 1152 (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983)).

When a state prisoner has defaulted on his federal claim in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred, unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

## B. State Court of Appeal Opinion

Petitioner raised this claim on direct appeal with the Court of Appeal (Lodged Doc. 3); however, he did not raise the claim in his petition for review with the California Supreme Court (Lodged Doc. 7). Petitioner raised the claim again in his state petition for writ of habeas corpus (Lodged Doc. 13), which the California Supreme Court rejected, citing *Waltreus*, 62 Cal. 2d at 225, and *Lindley*, 29 Cal. 2d at 723. The Court will look through the California Supreme Court's denial of the claim pursuant to *Waltreus* to the last reasoned state court opinion—the June 18, 2015

opinion of the Court of Appeal.

On direct appeal, the Court of Appeal rejected Petitioner's insufficient evidence claim on procedural grounds, because Petitioner failed to comply with California Rules of Court, Rule 8.204(a)(1)(C),[13] by failing to specify the portions of the record that supported his argument. Because Petitioner failed to comply with the rule, the Court of Appeal determined that Petitioner had waived the claim. (Lodged Doc. 4 at 50.)

### C. State Court of Appeal's Finding of Procedural Default Was Independent of Federal Law and Adequate

The Court must first determine whether the state court's finding of procedural default is independent of federal law and adequate. *Ylst*, 501 U.S. at 803. "For a state procedural rule to be 'independent,' the state law basis for the decision must not be interwoven with the federal law." *Park*, 202 F.3d at 1152 (citing *Long*, 463 U.S. at 1040-41). State law grounds are "so interwoven if 'the state has made application of the procedural bar depend on an antecedent ruling on federal law [such as] the determination of whether federal constitutional error has been committed.'" *Id.* (quoting *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985)).

In California, "[i]f a party fails to support an argument with the necessary citations to the record, that portion of the brief may be stricken and the argument deemed to have been waived." *Miller v. Superior Court*, 101 Cal. App. 4th 728, 743 (2002) (internal citations and quotation marks omitted). This rule does not require the state to determine whether there were any federal errors; therefore, it is independent of federal law. Thus, the denial of Petitioner's insufficient evidence claim was based on an independent state law ground.

A state law ground is "adequate" if it is "'firmly established and regularly followed' at the time it was applied by the state court." *Poland v. Stewart*, 169 F.3d 573, 577 (9th Cir. 1999)

---

[13] Pursuant to the California Rules of Court Rule 8.204(a)(1)(C), "[e]ach brief must . . . [s]upport any reference to a matter in the record by a citation to the volume and the page number of the record where the matter appears."

38

(quoting *Ford v. Georgia*, 498 U.S. 411, 424 (1991)).  California's procedural rule that appellate briefs must be supported by specific references to the record has been consistently applied.  *See Miller*, 101 Cal. App. 4th at 743.  Based on the foregoing, California's procedural rule is adequate and independent; therefore, the Court will not review Petitioner's claim, unless he can demonstrate cause and prejudice or a fundamental miscarriage of justice.

### D.  **Petitioner Cannot Overcome His Procedural Default**

As the Court found an independent and adequate state procedural ground, "federal habeas review is barred unless the prisoner can demonstrate cause for the procedural default and actual prejudice, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.

"Cause under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him."  *Id.* at 753 (internal quotation marks omitted) (emphasis in original).  Examples include, "a showing that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that some interference by officials . . . made compliance impracticable, would constitute cause under this standard."  *Id.* (internal citation and quotation marks omitted).  Petitioner does not address "cause" for the procedural default; consequently, he cannot overcome the procedural default and the Court recommends denying the claim.

### VIII.  **Certificate of Appealability**

A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, but may only appeal in certain circumstances.  *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003).  The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.

(b)  There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.

(c)  (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

(A)  the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

(B)  the final order in a proceeding under section 2255.

(2)  A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3)  The certificate of appealability under paragraph (1) shall indicate which specific issues or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 537 U.S. at 338.

Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Accordingly, the Court recommends declining to issue a certificate of appealability.

## IX.  Conclusion and Recommendation

Based on the foregoing, the undersigned recommends that the Court dismiss the petition for writ of habeas corpus with prejudice and decline to issue a certificate of appealability.

40

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C § 636(b)(1). Within **thirty (30) days** after being served with these Findings and Recommendations, either party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections, if any, shall be served and filed within **fourteen (14) days** after service of the objections. The parties are advised that failure to file objections within the specified time may constitute waiver of the right to appeal the District Court's order. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **August 13, 2018**                        /s/ *Sheila K. Oberto*
                                                        UNITED STATES MAGISTRATE JUDGE